1
2
3
4                          UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7    JAMES DOE,                              Case No.  23-cv-04734-JSC

                        Plaintiff,
8
                                             **ORDER RE STATE FARM'S MOTION**
9           v.                               **FOR SUMMARY JUDGMENT OR**
                                             **PARTIAL SUMMARY JUDGMENT**
10   STATE FARM GENERAL INSURANCE
     COMPANY,                                Re: Dkt. No. 48
11
                        Defendant.
12

13          After losing a luxury watch, Plaintiff James Doe filed an insurance claim with State Farm

14   for the value of that watch.  State Farm denied his claim and canceled Plaintiff's policy.  Plaintiff

15   filed suit, alleging breach of contract and breach of the covenant of good faith and fair dealing

16   among other claims.  Pending before the Court is State Farm's motion for summary judgment.

17   Having considered the parties' written submissions, and having had the benefit of oral argument

18   on October 10, 2024, the Court GRANTS in part and DENIES in part State Farm's motion for

19   summary judgment.  The record reflects a genuine dispute as to whether Plaintiff's material

20   misrepresentation was made with knowledge of falsity and thus an intent to deceive.

21                                      **BACKGROUND**

22   **A.     Facts**

23          Plaintiff purchased a Personal Articles Policy from State Farm that included coverage for

24   jewelry.  (Dkt. No. 48-5 at 7.)[1]   The policy contained a "Concealment or Fraud" provision,

25   stating:

26          This entire policy will be void if, whether before or after a loss, you

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

have intentionally concealed or misrepresented a material fact or circumstance relating to this insurance.

(*Id*. at 12.)

On June 19, 2022, Plaintiff left his house in the East Bay to run errands in San Francisco. (Dkt. No. 64-1 ¶ 18.)  On his way home, he was rear-ended while driving south on I-880.  (*Id.* ¶¶ 23-24; Dkt. No. 48-5 at 82.)  After the accident, Plaintiff drove to the shoulder of the highway. (Dkt. No. 48-5 at 83-84.)  His vehicle "sustained minor damage including a "dented, broken and partially detached rear bumper."  (*Id.* at 83.)

California Highway Patrol and emergency medical technicians responded to the accident. (Dkt. No. 64-1 ¶ 24.)  Plaintiff was transported via ambulance to the Fremont Kaiser Hospital emergency room.  (*Id.*)  The emergency room doctor informed Plaintiff he did not sustain a head concussion.  (*Id.* ¶ 25.)  He was discharged later that evening and took an Uber home.  (*Id.* ¶¶ 25-26.)

One week after the accident, Plaintiff flew to Montreal, where he owns a condo, to handle taxes, pay bills, and attend the Montreal annual jazz festival.  (Dkt. No. 48-5 at 154; Dkt. No. 64-1 ¶ 30.)

Two weeks after the accident, on July 3, 2022, Plaintiff filed a claim with State Farm reporting the disappearance of his BlancPain watch.  (Dkt. No. 48-5 at 22.)  His claim states:

> Mysterious disappearance; I was driving home in my car (Honda Accord) and was rear ended by another car on 6/19/2022. The back of my head struck the headrest hard upon impact. I could not keep my eyes open because of extreme light sensitivity to lights. Ambulance took me to the ER and my car was towed. I just realized my BlancPain watch is missing and that I was wearing that watch on my right wrist before the accident.

(*Id*.)  The following day, a State Farm representative spoke with Plaintiff about his claim.  He stated "he was wearing [the watch] while driving and while accident happened."  (*Id.* at 26.)

State Farm realized Plaintiff had filed a similar claim in 2018, which State Farm paid. (Dkt. Nos. 48-5 ("Insured was crossing the street when he was hit. Lost hi[s] watch."); Dkt. No. 48-6 (issuing payment for replacement value of the watch).)  State Farm thus reassigned the claim to its Special Investigative Unit.  (Dkt. No. 48-2 ¶¶ 5-6.)

On July 7, 2022, a Claims Specialist in the Special Investigative Unit, Samantha Davidson,

United States District Court
Northern District of California

spoke with Plaintiff.  (*Id.* ¶¶ 1, 6.)  Plaintiff recounted to Ms. Davidson he went to San Francisco "to take the watch to a jeweler to fix the clasp" but the jeweler was closed, and he was on his way home when the accident occurred.  (Dkt. No. 48-5 at 64.)  Plaintiff "did not call police, EMS, tow company, or Uber to see if [the watch] was found."  (*Id.* at 65; *see also* Dkt. No. 64-1 ¶ 50 (attesting that upon request of State Farm's attorney, Plaintiff "promptly notified the Blancpain corporation, Kaiser Permanente, the ambulance company, and Uber, about the disappearance of his watch.").)  The Claims Specialist scheduled a recorded statement for July 20, 2022.  (*Id.* at 63; Dkt. No. 48-2 ¶ 10.)

On July 19, 2022, Plaintiff met with a neurologist.  (Dkt. No. 64-12 at 2.)  The doctor noted Plaintiff was stuttering and "extremely photosensitive" and his "CT scan of the brain was rather unremarkable."  (*Id.* at 2, 6, 8.)  The diagnosis was "postconcussion syndrome."  (*Id.* at 8.)

On July 20, 2022, Ms. Davidson called Plaintiff for the recorded statement.  Plaintiff told her he was taking medication.  (Dkt. No. 64-1 at 15.)  According to Ms. Davidson's notes, Plaintiff "was difficult to understand . . . he did stutter sometimes but his words were also not clear and sometimes slurred."  (Dkt. No. 48-5 at 104.)  She canceled the recorded statement and referred Plaintiff for an examination under oath.  (Id.; Dkt. No. 64-1 ¶ 46.)

During the examination under oath, Plaintiff said the lost watch was in "the pocket of the hoodie that [he] was wearing" during the accident, (Dkt. No. 48-5 at 134), which contradicted his previous statement about wearing the watch during the accident.

On January 3, 2023, State Farm sent Plaintiff a letter informing him his claim had been denied pursuant to the concealment and fraud provision.  (Dkt. No. 48-5 at 163-67.)  State Farm also reported the suspected fraudulent claim to the California Department of Insurance.  (Dkt. No. 48-5 at 191-92.)

## B.    Procedural History

On August 17, 2023, Plaintiff filed suit in state court under a pseudonym, alleging nine causes of action on behalf of himself and a putative class. (Dkt. No. 10-1.)  State Farm filed a motion to dismiss and a motion to strike.  (Dkt. No. 10.)  The Court struck the class claims and granted in part and denied in part the motion to dismiss.  (Dkt. No. 22.)  The surviving claims are

United States District Court
Northern District of California

(1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) Unruh Civil Rights Act, (4) defamation, and (5) wrongful policy cancellation.  (*Id*. at 16-17.)

Now pending before the Court is State Farm's motion for summary judgment on all claims, or in the alternative, partial summary judgment on the extracontractual claims, including for punitive damages.  (Dkt. No. 48.)  State Farm also filed a request for judicial notice and an administrative motion to consider whether another party's material should be sealed.  (Dkt. Nos. 48-4, 49.)  Plaintiff opposes the motion for summary judgment.  (Dkt. No. 64.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party—here State Farm—bears the initial burden of demonstrating the lack of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  "[T]he burden then moves to the opposing party, who must present significant probative evidence tending to support its claim."  *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (cleaned up).

In ruling on a motion for summary judgment, the Court must "view the evidence presented through the prism of the substantive evidentiary burden."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor.  *Id.* at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge… ruling on a motion for summary judgment."  *Id.*

## DISCUSSION

## I.   DEFERRAL OF CONSIDERATION

As a general matter, Plaintiff argues State Farm's motion is premature because (1) "State Farm has advised Plaintiff that it intends to take his deposition and independent medical examination ("IME") in person upon his return to the Bay Area from Bangkok in November 2024," and (2) "expert testimony could be useful to determine Plaintiff's mental illnesses and to ascertain whether State Farm conducted a full, fair, and thorough investigation."  (Dkt. No. 64 at

2.)  The proper procedural vehicle for such argument is Federal Rule of Civil Procedure 56(d), permitting the court to "defer consideration" of a summary judgment motion "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  A party requesting a continuance pursuant this rule must identify "the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006).  Plaintiff has not described what "specific facts" expert testimony would reveal and does not explain how his deposition or the IME could reveal facts "unavailable" to him.  *See* FRCP 56(d).  Therefore, the Court declines Plaintiff's request to defer judgment on the pending summary judgment motion.  *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) ("Failure to comply with the requirements of Rule 56(f)[2] is a proper ground for denying discovery and proceeding to summary judgment.").

## II.     BREACH OF CONTRACT

State Farm asserts Plaintiff's breach of contract claim fails because State Farm properly denied coverage on the basis of Plaintiff's material misrepresentations.  The "Concealment or Fraud" provision in Plaintiff's policy states the "entire policy will be void if" the insured "intentionally concealed or misrepresented a material fact or circumstance relating to this insurance."  (Dkt. No 48-5 at 12.)  To void a policy based on such a provision, "the false statement must have been knowingly and willfully made with the intent (express or implied) of deceiving the insurer."  *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1415 n.7 (1988).  While generally a question of fact, intent to deceive can be established as a matter of law "when the misrepresentation is material and the insured willfully makes it with knowledge of its falsity."  *Id.* at 1417-18; s*ee also Ram v. Infinity Select Ins.*, 807 F. Supp. 2d 843, 853 (N.D. Cal. 2011) ("[W]here a plaintiff knowingly and willfully, with intent to deceive the insurer, makes false statements as to material matters in the course of the insurer's investigation of his claim, the

---

[2] By amendment in 2010, "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment.

United States District Court
Northern District of California

1  defendant is entitled to summary judgment on the plaintiff's breach of contract claim.").

2      State Farm argues it is entitled to summary judgment on the breach of contract claim

3  because it is undisputed Plaintiff made a material misrepresentation about whether he was wearing

4  the watch at the time of the accident.  In his conversation with a State Farm representative,

5  Plaintiff stated "that he was wearing [the watch] while driving and while accident happened."

6  (Dkt. No. 48-6.)  In support of his claim, he submitted photos of a cut on his hand, which he said

7  "was likely caused when [his] BlancPain watch dislodged and fell out of [his] wrist."  (Dkt. No.

8  48-5 at 74.)  He submitted another photo with the following title: "Healing cut to my upper left

9  hand. I normally wear my watches **on my left wrist**. The collision dislodged my watch."  (*Id.*)

10      But during his examination under oath, Plaintiff changed course:

11          Yes, I was wearing the watch when the accident -- no.  I was not
           wearing the watch.  The watch was on my person as I now recall it,
12          and that is the fact, that it was in my hoodie pocket.

13  (Dkt. No. 48-5 at 143.)  So, the record is undisputed Plaintiff made a misrepresentation about

14  whether he was wearing the watch at the time of the accident.

15      And Plaintiff concedes the misrepresentation about the location of his watch is material.

16  (Dkt. No. 64 at 6 ("Clearly, how Plaintiff lost his wristwatch is material to State Farm's

17  investigation of his claim."); *see also Cummings*, 202 Cal. App. 3d at 1416 ("A question and

18  answer are material when they relate to the insured's duty to give to the insurer all the information

19  he has as well as other sources of information so that the insurer can make a determination of its

20  obligations.").

21      But there is a genuine dispute about whether Plaintiff made the misrepresentation with

22  knowledge of its falsity.  Plaintiff attests that in preparation for the examination under oath, he

23  looked through photos on his iPhone.  (Dkt. No. 64-1 ¶ 48.)  After seeing "a selfie photo" he took

24  of himself at Kaiser while waiting for discharge papers, he "was better able to recall" the events of

25  the accident.  (Dkt. No. 64-1 ¶¶ 23, 48).  Specifically, Plaintiff testified that upon seeing the selfie,

26  he remembered he was not wearing the watch on his wrist when the accident happened; rather, he

27  had taken it off and put it in his hoodie pocket.  (Dkt. No. 48-5 at 143-44.)

28      Drawing all inferences in Plaintiff's favor, the Court cannot find as a matter of law that

United States District Court
Northern District of California

6

Plaintiff had knowledge of falsity the times he reported the watch had been on his wrist. Plaintiff's declaration and examination under oath testimony raise a triable issue of fact: did Plaintiff know his initial statements about the location of the watch were false or did Plaintiff make those statements believing them to be true and subsequently refresh his recollection?  This dispute over a material fact precludes the Court from finding for State Farm as a matter of law on the breach of contract cause of action.

The cases State Farm cites are distinguishable.  In *Castro*, the court disregarded the plaintiff's "attempts to wipe away the impact of his changing explanations . . .  by blaming his memory problems due to traumatic brain injuries."  256 F. Supp. 3d 1048, 1056 (N.D. Cal. 2017). But there, the record contained multiple misrepresentations regarding what was stolen from his garage and the value of the ever-changing stolen items that were not plausibly explained by refreshing the plaintiff's memory.  *Id.* at 1055-58.  Further, the *Castro* plaintiff "produce[d] different written receipts that themselves contain material inconsistencies"—a material inconsistency that could not be explained by mere misremembering.  *Id.* at 1056.

And in *Torralba*, the plaintiff did not argue that refreshing his memory accounted for the conflicting statements; instead, he disputed his involvement in making one of the statements. *Torralba v. Nat'l Gen. Ins. Co.*, No. ED-CV-221856-DMG-KKx, 2023 WL 8351566, at *5 (C.D. Cal. Nov. 20, 2023).  In his recorded statement and deposition, the plaintiff said a white Mercedes hit his car, while in an email, he said the white Mercedes did not make contact with his car. Because the plaintiff testified to working on the email, the court found knowledge of falsity, reasoning the plaintiff "to at least some degree, was aware of and responsible for the contradictory email statements."  *Id.*  Here, in contrast, Plaintiff offers evidence that after refreshing his recollection, he realized his initial recollection was false.  The Court cannot conclude that explanation is not credible as a matter of law.

Finally, State Farm argues evidence of other misrepresentations—such as whether he had planned on visiting his aunt on the day of the accident, or whether he searched his house for the purportedly missing watch—means Plaintiff knew his statement about wearing the watch was false.  But State Farm is improperly asking this Court to weigh the evidence.  *See Tolan v. Cotton*,

572 U.S. 650, 660 (2014) (per curiam); *see also Gambrel v. Knox Cty.,* 25 F.4th 391, 405 (6th Cir. 2022) (trial court could not reject the witness's testimony at summary judgment, even if it might ultimately be difficult for jurors to believe him, because the testimony was not so "inherently incredible").

Because there is a genuine dispute as to whether Plaintiff knew his material misrepresentation was false when made, the Court DENIES State Farm's motion for summary judgment on the breach of contract cause of action.

### III.   WRONGFUL POLICY CANCELLATION

As to the wrongful policy cancellation claim, State Farm premises its argument on Plaintiff's material misrepresentation: "In light of Plaintiff's material misrepresentations in the presentation of the Claim, State Farm properly cancelled the Policy under the Policy's Conditions and California law."  (Dkt. No. 48 at 25.)  As discussed above, California law requires that a false statement be "knowingly and willfully made with the intent . . . of deceiving the insurer" to justify cancellation under a fraud and concealment provision.  *See Cummings*, 202 Cal. App. 3d at 1415. Similarly, State Farm's policy requires "intentional[] conceal[ment]" to void the policy.  (Dkt. No. 48-5 at 12.)  Because the evidence precludes the Court from determining Plaintiff intentionally and knowingly made a material misrepresentation as a matter of law, *see supra*, the Court DENIES summary judgment for State Farm on the wrongful policy cancellation cause of action.

### IV.   COVENANT OF GOOD FAITH AND FAIR DEALING

State Farm asserts it is entitled to summary judgment on the bad faith cause of action. Plaintiff alleges State Farm "improperly and in bad faith denied coverage for his Claim based on State Farm's fabricated and manufactured untruths, misinformation, falsehoods, and misleading information."  (Dkt. No. 10-1 ¶ 47.)  Specifically, he argues State Farm "did not conduct a fair, full, and thorough investigation before accusing Plaintiff of committing or seeking to commit insurance fraud" and "relied on the inadequate investigation done by" Ms. Davidson.  (Dkt. No. 64 at 8.)

An insurer is liable for breach of the implied covenant of good faith and fair dealing if it acted unreasonably in denying coverage.  *Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d

653, 656 (9th Cir. 1994). Conversely, "[w]here benefits are withheld for proper cause, there is no breach of the implied covenant." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990). "[A]n insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability . . . is not liable in bad faith even though it might be liable for breach of contract." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007). This "genuine issue rule . . . allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable." *Id.* (citation omitted).

In this case, the undisputed evidence establishes multiple inconsistencies in Plaintiff's presentation of his claim, which made it reasonable as a matter of law for State Farm to deny coverage. One inconsistency, as described above, is the location of the watch during the accident. Plaintiff stated he was wearing the wristwatch at the time of the accident, (Dkt. No. 48-5 at 74 (photo submitted by Plaintiff stating "The collision dislodged my watch.")), then testified the watch was in his pocket at the time of the accident. (Dkt. No. 48-5 at 143.) Plaintiff also presented conflicting accounts about which wrist he was wearing the watch on. Whereas his initial claim stated he "was wearing th[e] watch on [his] right wrist before the accident," (Dkt. No. 48-5 at 22), he submitted a photo with a cut on his "upper left hand," explaining "I normally wear my watches on my left wrist. The collision dislodged my watch." (Dkt. No. 48-5 at 74.) Plaintiff also testified he went to San Francisco the day of the accident to visit his aunt, (*Id.* at 137-38), whereas he previously told Ms. Davidson he "decided to visit his aunt" upon realizing the jeweler was closed. (Dkt. No. 48-5 at 64.) Finally, on July 4, 2022, Plaintiff told a State Farm representative he had "looked around his house," which is in San Francisco, for the watch. (Dkt. No. 48-5 at 26.) But Plaintiff testified he did not realize the watch was missing until arriving in Montreal, (Dkt. No. 48-5 at 152), and he was still in Montreal when he spoke to the State Farm representative. (Dkt. Nos. 48-5 at 197; Dkt. No. 64-1 ¶ 36.)

Faced with multiple inconsistencies, regardless of whether they were made knowingly, it was reasonable for State Farm to deny Plaintiff's claim. *See, e.g.*, *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 995 (9th Cir. 2001) (finding the insurer's "refusal to pay [the plaintiff's] claim was

1    reasonable," in part due to the plaintiff's "inconsistent explanations" about the missing items);

2    *Castro*, 256 F. Supp. 3d at 1059 ("[E]ven if I had not determined . . . that State Farm was entitled

3    to deny the claim and void the Policy under the Concealment and Fraud provision, given the

4    evidence about the continual shifting of the information regarding the source, value, and

5    sometimes type of the objects claimed stolen by [the plaintiff], there was a 'genuine dispute' over

6    coverage that precludes a bad faith claim as a matter of law.")

7         Moreover, Plaintiff does not provide probative evidence to support his conclusory

8    allegation that the investigation was not thorough or fair.  First, Plaintiff argues State Farm

9    "mischaracterized the facts" of his accident "as being similar to the facts involving" the prior

10   accident.  (Dkt. No. 64 at 9.)  He cites as evidence the following note by a State Farm

11   representative: "Note of SF prior claim with similar facts of loss."  (Dkt. No. 64-3 at 24.)  But this

12   note does not say the accidents were similar, it says the claims were similar, and they were.  In

13   2018 and 2022, Plaintiff filed claims for a missing watch after being struck by a car.  (Dkt. No. 48-

14   5 at 2, 44-45.)  Second, Plaintiff cites a note from State Farm's file that his credit check showed

15   "No recent bankruptcy, no collections, no negative information."  (Dkt. No. 64 at 9.)  But a clean

16   credit check does prohibit State Farm from investigating a claim.  Finally, Plaintiff cites Ms.

17   Davidson's note stating there was no witness to his misrepresentation.  (Dkt. No. 64-9 at 7.)  But

18   the very next sentence identifies documents containing the misrepresentation, including the

19   examination under oath.  (*Id.*)  Thus, none of the evidence Plaintiff cites raises a triable issue of

20   material fact as to whether State Farm conducted a full and fair investigation.  *See Hodjat v. State*

21   *Farm Mut. Auto. Ins. Co.*, 211 Cal. App. 4th 1, 10 (2012) (granting summary judgment for insurer

22   on bad faith claim where the insured "fail[ed] to provide any facts, much less citations to evidence

23   in the record, to support these sweeping accusations of wrongdoing").  The Court thus GRANTS

24   summary judgment for State Farm on the breach of the covenant of good faith and fair dealing

25   cause of action.  Because Plaintiff's request for punitive damages is premised on the bad faith

26   claim, (Dkt. No. 10-1 at 38), the Court also GRANTS summary judgment for State Farm on

27   Plaintiff's request for punitive damages.

28

United States District Court
Northern District of California

## V.   UNRUH CIVIL RIGHTS ACT VIOLATION

State Farm contends it is entitled to summary judgment on the Unruh Civil Rights Act cause of action.  Plaintiff alleges State Farm discriminated against him because of his mental illness when Ms. Davidson canceled his recorded statement and subjected him instead to an examination under oath after he informed her he had taken medications prescribed by his psychiatrist.  (Dkt. No. 10-1 ¶¶ 18, 107.)  The Unruh Civil Rights Act creates a civil cause of action for anyone "denied the right" to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever" because of "their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration statute."  Cal. Civ. Code §§ 51(b), 52.  "[A] plaintiff seeking to establish a case under the Unruh Act must plead and prove intentional discrimination," *Martin v. Thi E-Com., LLC*, 95 Cal. App. 5th 521, 538 (2023), which requires "willful, affirmative misconduct."  *Liapes v. Facebook, Inc.*, 313 Cal. Rptr. 3d 330, 340 (2023) (cleaned up).  "[D]isparate impact alone will not suffice." *Futterman v. Kaiser Found. Health Plan, Inc.*, 91 Cal. App. 5th 656, 669, (2023).  Because Plaintiff bears the burden of proof, State Farm "need not produce affirmative evidence of an absence of fact to satisfy its burden."  *See In re Brazier Forest Prod., Inc.*, 921 F.2d 221, 223 (9th Cir. 1990).  State Farm may "point to the absence of evidence to support the [Plaintiff's] case," at which point Plaintiff must "make a sufficient showing to establish the existence of all elements essential to [his] case on which [he] will bear the burden of proof at trial."  *Id.*

State Farm's provides a non-discriminatory justification for the examination under oath: Plaintiff agreed to submit to one when he signed his policy.  (Dkt. No. 48-5 at 13.)  And California courts have approved of such examinations.  *See West v. State Farm Fire & Cas. Co.*, 868 F.2d 348, 351 (9th Cir. 1989) ("[T]he California Supreme Court expressly approved the reasonableness of an examination under oath as a means of 'cross-examining' other statements of the insured.") (citing *Hickman v. London Assur. Corp.*, 184 Cal. 524, 527, 195 P. 45, 47 (1920)).

Plaintiff, in turn, provides no evidence of intentional discrimination.  In response to an interrogatory requesting facts supporting his allegation of intentional discrimination, Plaintiff

11

United States District Court
Northern District of California

1   "object[ed] . . . because discovery commenced only recently" and said he would "supplement his

2   response . . . as discovery proceeds," including after he obtained deposition testimonies from

3   relevant State Farm employees.  (Dkt. No. 48-5 at 175-76.)  Plaintiff did not depose the

4   investigator that canceled the recorded statement.  (Dkt. No. 64-1 at 14 ("My opportunity to cross-

5   examine Ms. Davidson about her notes will be at trial because I did not have an opportunity to

6   take her deposition prior to the August 16, 2024 fact discovery cut-off.").)  And Plaintiff did not

7   otherwise supplement his discovery responses.  (Dkt. No. 48-1 at 2.)

8          In his opposition, Plaintiff asserts the determination of whether his "mental illness rises to

9   the minimum level required under the Unruh Act should await the result of" his IME in November

10  2024.  (Dkt. No. 64 at 10.)  But Plaintiff must also present evidence of intentional discrimination

11  to survive a motion for summary judgment on this claim, which he has failed to do.  The Court

12  thus GRANTS summary judgment for State Farm on Unruh Civil Rights Act cause of action.

## VI.   DEFAMATION

14         State Farm contends it is entitled to summary judgment on Plaintiff's defamation cause of

15  action.  Plaintiff alleges State Farm filed reports "about Plaintiff and his claim to insurance claims

16  watchdogs and third party insurance claims tracking databases, falsely accusing Plaintiff of

17  committing insurance fraud."  (Dkt. No. 10-1 at 36.)  In California, "[t]he elements of a

18  defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5)

19  has a natural tendency to injure or causes special damage."  *Jackson v. Mayweather*, 10 Cal. App.

20  5th 1240, 1259 (2017) (cleaned up).

21         Plaintiff provides no evidence of "actual malice," which is necessary to establish State

22  Farm's report is unprivileged.  California's statutory insurer reporter privilege provides insurers

23  "qualified immunity," because it only provides immunity to insurers who act "without malice."

24  *Fremont Comp. Ins. Co. v. Superior Ct.*, 44 Cal. App. 4th 867, 872 (1996); *see also* Cal. Ins. Code

25  § 1872.5 ("No insurer . . . shall be subject to civil liability for libel, slander, or any other relevant

26  tort cause of action" for providing "[a]ny information or reports relating to suspected fraudulent

27  insurance transaction furnished to law enforcement officials, or licensing officials governed by the

28  Business and Professions Code" so long as that information is provided "without malice.").

"Actual malice" is "established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (2003) (cleaned up).

Plaintiff's opposition makes no reference to malice. His declaration "[p]arenthetically" notes that in the claim file:

> there appears to be a smiling emoji sign "):" after "NICB List the investigation information developed to date ):" It seems Ms. Davidson was happier about reporting my claim to the NICB as fraudulent than to fairly, fully, and thoroughly investigate and analyze my claim.

(Dkt. No. 64-1 ¶ 51 (quoting 64-3 at 8).) An emoji, particularly an ambiguous one, is not enough to establish "hatred or ill will."[3]

In sum, because Plaintiff has not provided evidence of actual malice to establish the report was not privileged, the Court GRANTS summary judgment for State Farm on the defamation cause of action.

## VII.    ADMINISTRATIVE MOTION RE SEALING

State Farm filed an administrative motion to consider whether another party's material should be sealed. (Dkt. No. 49.) When Plaintiff filed the complaint, he did so under a pseudonym. (Dkt. No. 10-1 at 2.) Initially, the Court granted Plaintiff leave to proceed anonymously. (Dkt. No. 22 at 3.) In its publicly filed compendium of evidence in support of its motion for summary judgment, State Farm thus filed all exhibits under seal. (Dkt. No. 49 at 5.) The Court subsequently rescinded its prior order permitting Plaintiff to proceed under a pseudonym. (Dkt. No. 68.) Plaintiff, the designating party, did not respond to State Farm's motion regarding sealing. But Plaintiff appealed the order requiring that he proceed under his actual name. (Dkt. No. 69.)

---

[3] Because the Court does not credit this evidence, it does not rule on State Farm's objection to this paragraph of Plaintiff's declaration. State Farm broadly objects to twenty paragraphs in Plaintiff's declaration, claiming the evidence is "not probative," "irrelevant and inadmissible." (Dkt. No. 66 at 8.) The Court declines to address such blanket, non-specific objections.

United States District Court
Northern District of California

As discussed at oral argument, on or before October 17, 2024, Plaintiff shall file a motion to stay the Court's order requiring him to proceed under his own name.  The Court will not require any exhibits to be unsealed until it rules on Plaintiff's motion to stay, or if Plaintiff does not file a motion by the above deadline.

### CONCLUSION

For the reasons stated above, the Court GRANTS State Farm's motion for summary judgment on all claims except the breach of contract and wrongful policy cancellation claims.  The Court DENIES State Farm's request for judicial notice.  (Dkt. No. 48-4.)  Judicial notice is not required to consider the pleadings in this case, *see Williams v. Alameda Cnty.*, 642 F. Supp. 3d 1001, 1014 (N.D. Cal. 2022), and the other documents are immaterial to resolution of the present motion.

Plaintiff shall make himself available for an in-person deposition and independent medical exam the week of November 18, 2024.  As previously ordered, expert disclosures are due December 6, 2024, and rebuttal disclosures are due January 10, 2025.  The expert discovery cutoff is February 14, 2025.  Any expert discovery motion must be filed with the Court pursuant to the discovery dispute joint letter process by February 21, 2025.  Motions to exclude expert testimony in whole or in part shall be brought as a motion in limine.

This Order disposes of Docket No. 48.

**IT IS SO ORDERED.**

Dated: October 11, 2024

JACQUELINE SCOTT CORLEY
United States District Judge

14